IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Scan Top Enterprise Company, Ltd., | ) | No. 14 C 7505 |
| v. | ) | Judge Virginia M. Kendall |
| Winplus North America, Inc., Winplus Company, Ltd., Sears Holding Corp., Ashland Inc., Big Lots, Inc., Service Champ Inc., and John Does 1-10 | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Scan Top filed this seven-count complaint against Winplus North America, Inc., Winplus Company, Ltd., Sears Holdings Corp., Ashland, Inc., Big Lots, Inc., Service Champ, Inc., and John Does 1-10 for patent infringement, copyright infringement, misappropriation of trade secrets, unjust enrichment, fraud, and civil conspiracy. Defendants seek to compel arbitration or, alternatively, dismiss the last five counts for failing to state a claim upon which relief may be granted. For the following reasons, Defendants' motion to dismiss [30] is granted in part and denied in part.

## I. BACKGROUND[1]

Scan Top develops, manufactures, and sells windshield wiper blades worldwide. (Dkt. No. 1, Compl. ¶ 16). As part of its windshield wiper development, Scan Top has invented and patented many products, including a variety of connectors that "snugly" attach windshield wipers to their wiper arms and have corresponding U.S. Patent No. 8,413,292 ("the '292 Patent') and U.S. Patent No. 8,650,701 ("the '701 Patent"). (*Id*. at ¶¶ 18-21). Both the '292 and '701 Patents

[1] The Court takes the following allegations from the Complaint and treats them as true in evaluating this motion. *See Vinson v. Vermillion County, Ill.*, 776 F.3d 924, 925 (7th Cir. 2015).

were initially issued to two inventors, but have since been assigned to Scan Top, who now holds "substantially all rights, title and interest in the patent[s]." (*Id*. at ¶¶ 18, 20). The '292 Patent was issued on April 9, 2013 and the '701 Patent was issued on February 18, 2014. (*Id*.)

Around February 2011, prior to the issuance and assignment of these patents, Scan Top and Winplus entered a Distribution Agreement under which Scan Top agreed to provide Winplus a variety of windshield wiper assemblies, including the PT-3, TL-2, and PH connectors. (*Id*. at ¶ 23). The PT-3 connector would eventually be protected by the '292 Patent and the TL-2 connector by the '701 Patent. (*Id*. at ¶¶ 19, 21). Before the Patents were issued, in the course of their manufacturer-distributor relationship, Scan Top supplied Winplus with "proprietary technical documents, technical drawings and data necessary to manufacture" the three connectors ("Documents and Data"). (*Id*. at ¶ 24). For example, on multiple occasions in April 2011, the President of Winplus requested and received Documents and Data on Scan Top's designs so Winplus could investigate whether the designs infringed the patents of any third party. (*Id*. at ¶¶ 26-27). All of the Documents and Data sent by Scan Top to Winplus were marked "Patent Pending" or "Confidential" and Scan Top continues to make reasonable efforts to maintain the secrecy of those materials. (*Id*. at ¶ 28).

Scan Top claims that Winplus subsequently induced a third-party manufacturer to produce counterfeit connectors using Scan Top's Documents and Data despite knowing they were confidential trade secrets. (*Id*. at ¶¶ 29, 32). Winplus has allegedly sold and continues to sell the infringing connectors to distributors, including the non-Winplus Defendants in this case. (*Id*. at ¶ 39).

## II. DISCUSSION

### A. Arbitration

As a preliminary matter, the Court denies Defendants' motion to compel arbitration of counts III through VII**.** Section 2 of the Federal Arbitration Act ("FAA") embodies a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract. *See Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citing *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011)). Regardless of the strong federal policy favoring arbitration, however, a district court does not have the authority under the FAA to compel arbitration in another district. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011). Nor can a district court order arbitration in its own district in the face of an adverse forum selection clause. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 328 (7th Cir. 1995).

Here, the arbitration clause states that arbitration "shall be resolved at the request of any party to this Agreement by final and binding arbitration conducted by one arbitrator in Los Angeles, California." (Dkt. No. 31 at 5). When an arbitration clause in a contract includes a forum selection clause, only a district court in that forum can issue a Section 4 order compelling arbitration. *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) (citation omitted). Otherwise, the clause of Section 4 requiring the same district to issue both the arbitration and order to compel would be meaningless. *Id.*

Because the arbitration clause requires that arbitration take place in California, this Court lacks the authority to compel that arbitration. *See, e.g., Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005) (collecting cases and agreeing with the "majority view" that only a district court in the forum where arbitration is to occur has authority to compel

arbitration); *EZLinks Golf, Inc. v. Brown*, 2013 WL 1285651, at *2 (N.D. Ill. March 27, 2013); *Smith v. ERJ Dining, LLC*, 2012 WL 447618, at *2 (N.D. Ill. Feb. 10, 2012). If Defendants wish to pursue enforcement of the arbitration clause, the proper procedure is for them to bring a motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). *See Faulkenberg*, 637 F.3d at 808. Alternatively, Defendants may bring an action under Section 4 of the FAA in a district court in Los Angeles, California, which would have the authority to compel arbitration of Scan Top's claims. If Winplus decides to seek compulsion of arbitration in a California district court, it may then file a motion asking this Court to stay this case pending resolution of the arbitration issue in California. *See Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2004) (court maintains inherent power to stay proceedings in the interest of "economy of time and effort for itself, for counsel, and for litigants") (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In the meantime, the motion to compel arbitration is denied.

**B. Motion to Dismiss**

The Court turns next to Defendants' motion to dismiss Counts III through VII for failing to state claims upon which relief can be granted. To state a claim upon which relief may be granted, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). A claim is plausible where the complaint contains factual content that supports a reasonable inference that the defendant is liable for the alleged harm. *Iqbal*, 556 U.S. at 678. This requires enough factual content to create a reasonable expectation that discovery will reveal evidence of wrongdoing. *See Twombly*, 550 U.S. at 556. In evaluating this motion, the Court accepts Scan Top's well-pleaded

allegations as true and draws all reasonable inferences in Scan Top's favor. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

**1. Copyright Infringement**

Count III is dismissed without prejudice because Scan Top has failed to adequately allege ownership of the five subject copyrights. Under 17 U.S.C. § 201(a), "Copyright in a work protected under this title vests initially in the author or authors of the work." From Scan Top's Complaint and briefs, it is unclear who the author(s) of the five subject copyrights are. Paragraph 62 of Scan Top's Complaint states that the copyrights "have been assigned to Scan Top, which filed the [applications] for copyright registration with the United States Copyright Office on September 8, 2014[.]" This statement indicates that Scan Top filed the subject applications with the Copyright Office, but leaves uncertain who the author of the original work was. In its Response brief, Scan Top changes the language: "The following works have been assigned to Scan Top, which were registered with the United States Copyright Office on September 8, 2014[.]" (Dkt. No. 47, Resp. 6). This new language makes it ambiguous whether Scan Top even registered the copyrights.

To resolve this issue, the Court takes judicial notice of the information provided on the United States Copyright Office website, which clarifies that "Danyang UPC Auto Parts Co., Ltd."**—**and not Scan Top**—**is the copyright claimant on all five subject copyrights. *See Laborers Pension Fund* v. *Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (judicial notice of information from the official website of the FDIC); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (court can take judicial notice of information compiled on official government web sites). Scan Top does not appear anywhere on these registration certificates.

The issue now becomes whether Scan Top adequately alleged that there was a valid transfer of ownership of the copyrights to Scan Top.

"A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). Merely alleging, as Scan Top does, that the copyrights were assigned to it is insufficient to survive a motion to dismiss. Scan Top must provide allegations from which one can infer a writing that transferred the copyrights. *See* 17 U.S.C. § 204(a); *Gaiman v. McFarlane*, 360 F.3d 644, 650 (7th Cir. 2004) ("copyright assignments must be in writing"). Absent allegations concerning a writing transferring ownership of the subject copyrights to Scan Top, Scan Top cannot state a claim concerning the ownership of the copyrights.

**2. Trade Secrets**

Scan Top has stated a claim for misappropriation of a trade secret under the Illinois Trade Secret Act, 765 ILCS 1065/1 et seq. To state a claim under the Act, a plaintiff must show that a trade secret existed; the trade secret was misappropriated; and the owner of the trade secret was damaged by the misappropriation. *See Liebert Corp. v. Mazur*, 357 Ill. App. 3d 265, 281 (1st Dist. 2005). Winplus maintains that Scan Top has not sufficiently pled the existence of a trade secret.

To qualify as a trade secret under the Act, the subject information must be both sufficiently secret and reasonably protected. *See* 765 ILCS 1065/2(d)(1-2); *Mazur*, 357 Ill. App. 3d at 276. The "existence of a trade secret ordinarily is a question of fact…best resolved by a fact finder after full presentation of evidence from each side." *Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003) (citations and internal quotations

omitted). At the pleading stage, plaintiffs need only describe the information and efforts to maintain the confidentiality of the information in general terms. *See, e.g.*, *Covenant Aviation Security, LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014) (identification of trade secret as specific business information such as profit and loss information and internal costs and overhead adequate to state claim); *GoHealth, LLC v. Simpson*, 2013 WL 6183024, at *12 (N.D. Ill. Nov. 26, 2013) (identification of trade secret as processes, systems, and technology that allowed call center to respond quickly adequate to state a claim); *Papa John's Int'l v. Rezko*, 446 F.Supp.2d 801, 812 (N.D. Ill. 2006) (claim allowed to proceed though "unclear which trade secrets of the 'Papa John's System' were misappropriated").

This is not, as Winplus maintains, a case where Scan Top has merely "point[ed] to broad areas of [information] … and asserted that something there must have been secret." *See, e.g.*, *Carpenter v. Aspen Search Advisers LLC*, 2011 WL 1297733, at *3 (N.D. Ill. Apr. 5, 2011) (dismissing for failure to state a claim); *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) (pointing to "broad areas of technology" insufficient to state a claim). Nor is it a case where the sale of the product belies the secret protection of the alleged trade secrets. *See, e.g.*, *Thermal Zone Products Corp. v. Echo Eng'g, Ltd.*, 1993 WL 358148, at *5 (N.D. Ill. Sep. 14, 1993). Scan Top alleges that the misappropriated trade secrets are the "technical drawings and data" provided to Winplus by Scan Top that are "necessary to manufacture the PT-3, TL-2 and PH windshield wiper blade connectors." (Dkt. No.1, Compl. ¶¶ 24, 29, 72). Scan Top also provides the dates on which those specific documents and data were allegedly provided to Winplus and alleges that they were provided in confidence with the markings "Patent Pending" or "Confidential" on them. (*Id*. at ¶¶ 24, 28). The Court recognizes that trade secret law "does not offer protection against discovery by fair and honest means …

[including] the process known as 'reverse engineering,' in which a skilled person studies a product and figures out how to produce it." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974). However, at this point, Scan Top has alleged something beyond mere drawings or designs of these three connectors: it has alleged documents and data "necessary to manufacture" the connectors. Scan Top is not required to disclose these documents and data at the pleading stage and doing so would "result in public disclosure of the purported trade secrets." *See, e.g., AutoMed Tech., Inc. v. Eller*, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001) (internal citation omitted). Ultimately, Scan Top will have to identify which specific designs Winplus allegedly misappropriated, but at this early stage, Scan Top's allegations are sufficiently specific to identify the trade secrets for purposes of surviving a motion to dismiss.

**3. Unjust Enrichment, Fraud, and Civil Conspiracy**

Counts V-VII assert claims of unjust enrichment, fraud, and civil conspiracy respectively. The Court beings by finding that all three of these claims are properly governed by the heightened Rule 9(b) pleading standard. "It is allegations of fraud, not claims of fraud, to which Rule 9(b) applies." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011). Depending on the allegations in a particular case, the heightened pleading standard may apply to claims of both unjust enrichment and civil conspiracy. *See, e.g., id.* (applying Rule 9(b) to unjust enrichment claim); *Gaudie v. Countrywide Home Loans, Inc.*, 683 F. Supp. 2d 750, 760 (N.D. Ill. 2010) ("Because the underlying tort of the conspiracy is fraud, Rule 9(b)'s heightened pleading requirements apply to this claim."). The success of both Scan Top's conspiracy and unjust enrichment claims depend on the success of the underlying fraud claim. With respect to the civil conspiracy claim, Scan Top asserts: "Neither Winplus nor the Third-Party Manufacturers possessed the knowledge to develop reliable, high-

quality windshield wiper blade connectors…[they] thus unlawfully conspired to unlawfully obtain that knowledge from Scan Top, use that knowledge to make the Infringing Connectors, and unfairly compete with Scan Top." (Dkt. No. 1, Compl. at ¶ 96). With respect to the unjust enrichment claim, Scan Top similarly alleges that "Defendants received and retained a benefit by acquiring and using Scan Top's trade secrets, proprietary designs and wiper blade connector technology without paying for them." (Dkt. No. 1, Compl. at ¶ 77). Underlying both of these claims is the fraud surrounding the misappropriation of the Documents and Data, as well as the subsequent manufacture of counterfeit connectors. And, where an underlying claim of fraud is deficient, a claim for unjust enrichment or civil conspiracy is also deficient. *See Pirelli*, 631 F.3d at 448 (unjust enrichment claim dismissed where it could not be separated from fraud claim); *Assoc. Benefit Serv's, Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) (internal quotation and citation omitted) ("…where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well."); *Suburban Buick, Inc. v. Gargo*, 2009 WL 1543709, at *11 (N.D. Ill. May 29, 2009) ("[f]ailure to allege sufficiently the underlying fraud claim will result in dismissal of the conspiracy claim.").

However, even under the heightened Rule 9(b) pleading standard, all three claims are pled with specificity sufficient to survive a motion to dismiss. Claims evaluated under Rule 9(b) must allege the "who, what, when, where, and how" of the fraud. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011); *see Camasta v. Jos. A. Bank. Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (Rule 9(b) requires the plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by

which the misrepresentation was communicated to the plaintiff") (citation and quotation marks omitted). This heightened standard of pleading exists to require "the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Camasta*, 761 F.3d at 738 (internal quotation and citation omitted).

The only point of contention between the parties with respect to Counts V-VII is whether Scan Top has provided sufficient detail describing "what" the fraud is. It has. Scan Top specifically alleges that on April 13, 2011 and April 17, 2011, Scan Top "informed Winplus that it had made additional changes to its new wiper design. At Mr. Chai's [president of Winplus] request, and in reliance on his promise to keep the Documents and Data confidential, Scan Top sent Winplus the updated Documents and Data." (Dkt. No. 1, Compl. at ¶ 27). Scan Top goes on to allege that Winplus acquired the Documents and Data by "falsely stating that it wanted to study the Documents and Data only for purposes of assessing infringement of any third party patents" when "[i]n reality or in addition, Winplus wanted to copy the Documents and Data and send them to a Third-Party Manufacturer…" (Dkt. No. 1, Compl. at ¶ 85). These allegations are representative of the details pled in the Complaint that sufficiently describe the alleged fraud. The pleading indicates that Scan Top has conducted an adequate precomplaint investigation and Winplus is on notice as to the allegations against it. Also, as already discussed, Scan Top has sufficiently identified the Documents and Data. Taking all the allegations as true and drawing all inferences in Scan Top's favor, Counts V-VII of the Complaint are sufficiently pled to survive this motion to dismiss.

#### 4. Improperly Named Defendants

Finally, Defendants' motion to dismiss Counts III through VII against SHC, BLI, AI, and SCI is denied without prejudice. Scan Top has agreed to amend its Complaint and clarify that Counts III through VII are only against Winplus and the Court will grant it leave to do so. The Court admonishes Scan Top to change not just the first sentence in the prayer for relief, but any text that inappropriately implicates SHC, BLI, AI, and SCI in Counts III through VII. The Court will allow Scan Top 28 days to amend its Complaint accordingly.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [30] is granted in part and denied in part. Scan Top has until September 15, 2015 to amend its complaint in accordance with this ruling.

Date: 8/19/2015

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois