IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| SCAN TOP ENTERPRISE COMPANY, LTD., | ) ) | |
| Plaintiffs, | ) ) | Case No.: 14 C 7505 |
| v. | ) ) | |
| WINPLUS NORTH AMERICA, INC.; et al, Defendants. | ) ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Scan Top filed a seven-count complaint against Winplus North America, Inc., Winplus Company, Ltd., Sears Holdings Corp., Ashland, Inc., Big Lots, Inc., Service Champ, Inc., and John Does 1-10 for patent infringement, copyright infringement, misappropriation of trade secrets, unjust enrichment, fraud, and civil conspiracy. Defendants moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to compel arbitration or, alternatively, dismiss the last five counts for failing to state a claim upon which relief may be granted. On August 19, 2015, this Court denied the bulk of that motion, though it granted the dismissal of Scan Top's copyright infringement claim without prejudice. On September 15, 2015, Scan Top filed an amended complaint containing the same seven claims as the original complaint. Defendants Winplus Company, Ltd. and Winplus North American, Inc. (jointly "Winplus") move to dismiss the last five counts for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Defendant Winplus' motion to dismiss Counts III through VII for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure is granted. (Dkt. No. 95).[1]

---

[1] Defendants' motions to dismiss filed on March 3, 2016 are dismissed as moot. (Dkt. Nos. 140, 142). At a status hearing held on January 21, 2016, the parties informed the Court that the pending motion to dismiss was unaffected by the consolidation of cases and the Court provides this ruling in accordance with the parties' representations at that status hearing. The most-recently filed motions to dismiss are merely duplicative of the motion that has already been fully briefed. There is no need for the parties to brief these motions.

1

# BACKGROUND[2]

Around February 2011, Scan Top and Winplus entered a Distribution Agreement under which Scan Top agreed to provide Winplus a variety of windshield wiper assemblies, including the PT-3, TL-2, and PH connectors. (Dkt. No. 131, ¶ 23). The Distribution Agreement included a Distribution Side Agreement that required Scan Top to resolve concerns that the assemblies violated certain third-party patents. (*See* Sheehan Decl., Ex. A). Other than these two agreements, Scan Top and the Winplus Defendants had never engaged in business together. (*See* Sheehan Decl.). In the course of their manufacturer-distributor relationship, Scan Top supplied Winplus with "proprietary technical documents, technical drawings and data necessary to manufacture" the three connectors ("Documents and Data"). (Dkt. No. 131, ¶ 24). For example, on multiple occasions in April 2011, the President of Winplus requested and received Documents and Data on Scan Top's designs so Winplus could investigate whether the designs infringed the patents of any third party. (*Id*. ¶¶ 26-27). All of the Documents and Data sent by Scan Top to Winplus were marked "Patent Pending" or "Confidential" and Scan Top continues to make reasonable efforts to maintain the secrecy of those materials. (*Id*. ¶ 28). Scan Top claims that Winplus subsequently induced a third-party manufacturer to produce counterfeit connectors using Scan Top's Documents and Data despite knowing they were confidential trade secrets. (*Id*.

---

[2] The Court takes these allegations from the Second Amended Complaint as true for purposes of evaluating Winplus' motion to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure. *See Faulkenberg v. CB Tax Franchise Sys.*, *LP*, 637 F.3d 801, 806 (7th Cir. 2011) (citing *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 677 (7th Cir. 2007)). As already mentioned, Plaintiffs filed a Second Amended Complaint subsequent to briefing this motion based on the Court's order granting Defendant's motion to consolidate. The parties informed the Court that the newest complaint did not moot their arguments on the pending motion to dismiss. The Court, therefore, applies the parties' arguments to their newly-filed Second Amended Complaint, which is materially the same as the Amended Complaint. The Court also considers the agreements, declaration, and other exhibits filed in support of the parties' briefing. *See Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (when ruling on a motion to dismiss for improper venue, the Court is not "obligated to limit its considerations to the pleadings nor convert the motion to one for summary judgment.").

¶¶ 29-32). Winplus has allegedly sold and continues to sell the infringing connectors to distributors, including the non-Winplus Defendants in this case. (*Id.* ¶ 33).

At the heart of the issue now before the Court is the arbitration provision in the parties' Distribution Agreement, which states in relevant part:

> 14.10 Arbitration. Any controversy, dispute or claim of whatever nature arising out of or in connection with the interpretation, meaning, performance, breach or enforcement of this Agreement, including any controversy, dispute or claim based on contract, tort, or statute, and including without limitation claims relating to the validity of this Agreement, shall be resolved at the request of any party to this Agreement by final and binding arbitration conducted by one arbitrator in Los Angeles, California, administered by and in accordance with the Construction Rules of Arbitration of the American Arbitration Association ("AAA"), and judgment upon any award rendered by the arbitrator may be entered by any State or Federal Court having jurisdiction thereof.

(*See* Dkt. No. 80, 3-4). Based on this provision, Winplus now asks this Court to dismiss Counts III-VII of the Second Amended Complaint for lack of venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure.

### DISCUSSION[3]

Federal Rule of Civil Procedure 12(b)(3) provides for the dismissal of an action for improper venue. *See* Fed. R. Civ. P. 12(b)(3). Dismissal of a case under Rule 12(b)(3) due to a

---

[3] The Court notes that the Winplus Defendants did not waive their Rule 12(b)(3) argument for improper venue by failing to raise this particular rule in their original motion to dismiss, Dkt. No. 30. Rule 12(g)(2) prohibits successive Rule 12 motions from raising improper venue where such argument was "available to the party but omitted from its earlier motion." *See, e.g., Johnson v. United Airlines*, No. 12 C 5842, 2013 WL 323404, at *1 (N.D. Ill. Jan. 25, 2013) (denying Rule 12(b)(3) motion where challenge to venue was not raised in initial motion to dismiss); *Killian v. Concert Health Plan*, 2008 WL 2561218, at *1 (N.D. Ill. June 24, 2008) ("Rule 12(g) requires a defendant to raise all defenses under 12(b)(2)-(5) at one time, under penalty of waiver."). Winplus, however, did raise its objection to venue in its initial motion. Winplus initially moved to dismiss Plaintiffs' Complaint based on a contractual arbitration clause, s*ee* Dkt. No. 31, 6-7, which—according to the Seventh Circuit—is "appropriately conceptualized as an objection to venue…"*Faulkenberg*, 637 F.3d at 808 (internal quotation marks and citation omitted). The problem with Winplus' initial motion to dismiss was not that it failed to raise an objection to venue, but that it did so pursuant to the improper rule: namely, Rule 12(b)(6) instead of Rule 12(b)(3). *See* Dkt. No. 80, 4; *see also Faulkenberg*, 637 F.3d at 808 (holding that a motion to dismiss based on an arbitration provision is properly raised under Rule 12(b)(3)). Winplus' objection to venue was not waived by its failure to properly frame the issue under Rule 12(b)(3). *See, e.g., Alt. Delivery Solutions, Inc. v. R.R. Donnelley & Sons, Co.*, No. Civ.SA05CA0172-XR, 2005 WL 1862631, at *4 (W.D. Tex. July 8, 2005) (holding party's venue challenge not waived where it was brought under Rule 12(b)(6) instead of Rule 12(b)(3)). This Court denied Winplus' initial motion to dismiss with respect to the arbitration provision, but it did not make a final determination as to whether venue was improper. The issue is now properly before the Court for determination.

valid arbitration clause is appropriate. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). The Federal Arbitration Act governs the enforceability of arbitration clauses in contracts and that Act embodies a strong federal policy in favor of enforcing arbitration clauses in contracts. *See* 9 U.S.C. § 1 *et seq.*; *see also Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 554–55 (1995).

"To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). However, once it is clear "that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Id*. "To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kiefer*, 174 F.3d at 909 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

Preliminarily, the Court notes that both Winplus Defendants—Winplus Company, Ltd. and Winplus North American, Inc.—have standing to invoke the arbitration provision in the Distribution Agreement. The Distribution Agreement was signed by Scan Top and Winplus Ltd., with a recital stating: "Upon execution of this Agreement, [Winplus Ltd.] intends to assign its rights and obligations hereunder to [Winplus NA] located in Ontario, California. [Plaintiff] has consented to this assignment and Winplus NA hereby accepts such assignment." (*See* Dkt. No. 108, Ex. 1, 2). There is nothing in the record clarifying whether that assignment was actually completed, but—regardless—it is evident that both Scan Top and the Winplus Defendants have

been behaving in the course of this litigation as if the Distribution Agreement governs both Winplus Defendants.

In determining whether a litigant that is not a party to an arbitration agreement may invoke that agreement, the Court must apply the relevant state contract law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). In this case, under California law,[4] a non-signatory may invoke an arbitration clause to compel a signatory plaintiff to arbitrate in cases of "1) incorporation by reference; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel." *See Boucher v. Alliance Title Co., Inc.*, 127 Cal. App. 4th 262, 268 (2005) (internal quotation marks and citation omitted). The doctrine of equitable estoppel applies where, "for example, a signatory plaintiff sues a nonsignatory defendant for claims that are based on an underlying contract. In such instance, the plaintiff may be equitably estopped to deny the nonsignatory defendant's right to enforce an arbitration clause that is contained within the contract that the plaintiff has placed at issue." *See Jenks v. DLA Piper Rudnick Gray Cary U.S. LLP* (2015) 243 Cal. App. 4th 1, 9, 196 Cal. Rptr. 3d 237, 243 (internal quotation marks and citations omitted). In this case, Plaintiff brings allegations against both Winplus Defendants and does not distinguish between the two entities in its pleading. In so doing, Plaintiff is now equitably estopped from denying the non-signatory defendant from invoking the arbitration provision to the extent the subject claims are inextricably intertwined with the underlying agreement and the arbitration provision is applicable. *See, e.g., id.*; *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal. App. 4th 1222, 1239, 123 Cal. Rptr. 3d 429, 443 (finding signatory litigant could be compelled to arbitrate claims against nonsignatory litigant "to extent that those claims [were] dependent upon, or inextricably intertwined with, the obligations imposed by the [underlying agreement].").

---

[4] The Distribution Agreements provide for the application of California Law and the parties do not object to the application of that law.

In this case, the subject arbitration provision states:

> Any controversy, dispute or claim of whatever nature arising out of or in connection with the interpretation, meaning, performance, breach or enforcement of this Agreement, including any controversy, dispute or claim based on contract, tort, or statute, and including without limitation claims relating to the validity of this Agreement, shall be resolved at the request of any party to this Agreement by final and binding arbitration conducted by one arbitrator in Los Angeles, California.

The "arising out of" language in this provision must be read broadly. *See Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (finding arbitration clause with language "[a]ny dispute, controversy or claim arising out of…" to be "broad and far reaching"); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly."). Indeed, such a broad provision must be read to cover all claims "having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *See id*. All that is required is that the factual allegations merely "'touch matters' covered by the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula*, 175 F.3d at 721 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n. 13 (1985)).

Interpreting the arbitration provision within this framework, the Court finds that the allegations in Counts III through VII fall squarely within its scope. All five counts are predicated on alleged misuse of the Documents and Data provided by Scan Top to Winplus. Count III alleges copyright infringement; Count IV alleges misappropriations of trade secrets; Count V alleges unjust enrichment; Count VI alleges fraud; and Count VII alleges civil conspiracy. All of these claims implicate the Documents and Data, and the Documents and Data were exchanged "in the course of [the parties'] manufacturer-distributor relationship." The copyright claim alleges that the infringing connectors are a "derivative work" of the Documents and Data; the

misappropriation of trade secrets claim is built on the premise that the Documents and Data were trade secrets and the Winplus Defendants knew they were trade secrets; the unjust enrichment claim seeks disgorgement of the profits Winplus reaped as a product of the alleged misappropriation; the fraud claim is based on allegedly false representations made by Winplus to Scan Top with the intent to copy the Documents and Data; and the civil conspiracy claim is predicated on an alleged agreement between Winplus and the third-party manufacturers to unlawfully obtain the Documents and Data to make the allegedly infringing connectors.

Neither Winplus Defendant had ever purchased products from, or done other business with, Scan Top other than under the Distribution Agreements; the exchange of Documents and Data allegedly happened in April 2011, two months into the parties' performance of their 2011 Distribution Agreement (which was entered into in February 2011); and—at least according to Winplus—the alleged misuse of the Documents and Data occurred when Scan Top refused to manufacture the product, as a breach of the Distribution Agreement. The only reasonable inference under these circumstances is that the exchange of Documents and Data and their alleged misuse occurred during the course of the performance or breach of the Distribution Agreement. And, even if it were ambiguous as to whether these claims fell within the scope of the arbitration provision, arbitration would still be favored. *See, e.g., Morgan Keegan & Co., Inc. v. Grant*, 486 F. App'x 678, at *1 (9th Cir. 2012) (internal quotation marks and citations omitted) (affirming district court's decision to compel arbitration where arbitration provision was extremely broad under California law and noting that the FAA resolves ambiguities as to the scope of arbitration in favor of arbitration).

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss Counts III through VII [95] is granted as applied to the Second Amended Complaint. Counts III through VII of Plaintiff's Second Amended Complaint are dismissed with prejudice with respect to the Winplus Defendants. Defendants' Motions to Dismiss Counts III through VII for Improper Venue [140] and [142] are dismissed as moot.

Date: March 9, 2016

Virginia M. Kendall
United States District Court Judge